353 F.3d 916    Page 1
353 F.3d 916, 2003-2 Trade Cases P 74,235, 57 Fed.R.Serv.3d 558, 17 Fla. L. Weekly Fed. C 125
**(Cite as: 353 F.3d 916)**

Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries
C.A.11 (Ala.),2003.

United States Court of Appeals,Eleventh Circuit.
PREWITT ENTERPRISES, INC., on its own behalf and on behalf of all others similarly situated, Plaintiff-Appellant,
v.
ORGANIZATION OF PETROLEUM EXPORTING COUNTRIES, Defendant-Appellee.
No. 03-11580.

Dec. 18, 2003.

**Background:** Gasoline station owner brought suit against Organization of the Petroleum Exporting Countries (OPEC), alleging violation of Sherman Act for illegal price-fixing agreements on production and export of crude oil and seeking equitable relief pursuant to Clayton Act. The United States District Court for the Northern District of Alabama, 00-00865-CV-C-S, U.W. Clemon, Chief Judge, dismissed suit for insufficient service of process and denied alternative service of process. Owner appealed.

**Holding:** The Court of Appeals, Barkett, Circuit Judge, held that there were no means available for service upon OPEC.

Affirmed.

See also, 2001 WL 624789.

West Headnotes

**[1] Federal Courts 170B €⇒776**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
       170BVIII(K)1 In General
         170Bk776 k. Trial De Novo. Most Cited Cases
District court's interpretation of rule governing service of process as a matter of law is generally reviewed *de novo*. Fed.Rules Civ.Proc.Rule 4, 28 U.S.C.A.

**[2] Federal Courts 170B €⇒776**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
       170BVIII(K)1 In General
         170Bk776 k. Trial De Novo. Most Cited Cases
District court's interpretation of foreign law in determining sufficiency of service of process is subject to *de novo* review.

**[3] Federal Courts 170B €⇒813**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
       170BVIII(K)4 Discretion of Lower Court
         170Bk813 k. Allowance of Remedy and Matters of Procedure in General. Most Cited Cases
District court's denial of motion for alternative service of process is reviewed for abuse of discretion, because plain language of governing rule stipulates that district court "may" direct alternative means of service. Fed.Rules Civ.Proc.Rule 4(f)(3), 28 U.S.C.A.

**[4] Associations 41 €⇒1**

41 Associations
   41k1 k. Nature and Status in General. Most Cited Cases
"Unincorporated association" is defined as body of persons acting together, without a charter, but upon methods and forms used by corporations, for prosecution of some common enterprise.

**[5] Federal Civil Procedure 170A €⇒491**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00642    Document 14-4    Filed 04/03/2008    Page 2 of 13

170A Federal Civil Procedure
   170AIII Process
      170AIII(B) Service
         170AIII(B)4 Foreign Corporations, Partnerships and Associations
            170Ak491 k. In General. Most Cited Cases

Organization of Petroleum Exporting Countries (OPEC) was amenable to designation of "unincorporated association" for purposes of service of process. Fed.Rules Civ.Proc.Rule 4(h), 28 U.S.C.A.

**[6] International Law 221 €═10.33**

221 International Law
   221k10.29 Actions Against Sovereign or Instrumentality
      221k10.33 k. Extent and Effect of Immunity. Most Cited Cases

Organization of Petroleum Exporting Countries (OPEC) was not "foreign state" or "political subdivision of a foreign state" pursuant to Foreign Sovereign Immunities Act (FSIA). 28 U.S.C.A. § 1608.

**[7] International Law 221 €═10.45(2)**

221 International Law
   221k10.45 International Organizations and Tribunals
      221k10.45(2) k. Privileges and Immunities. Most Cited Cases

Organization of Petroleum Exporting Countries (OPEC) was not "international organization" within meaning of International Organizations Immunities Act (IOIA), because statute only applied to international organizations in which United States participated pursuant to treaty or act of Congress. International Organizations Immunities Act, § 1 et seq., 22 U.S.C.A. § 288 et seq.

**[8] Federal Civil Procedure 170A €═493**

170A Federal Civil Procedure
   170AIII Process
      170AIII(B) Service
         170AIII(B)4 Foreign Corporations, Partnerships and Associations
            170Ak493 k. Service Outside District of Suit. Most Cited Cases

Service on Organization of Petroleum Exporting Countries (OPEC) was prohibited by law of Austria where OPEC resided, and thus could not be accomplished by international registered mail, return receipt requested, even though OPEC received actual notice. Fed.Rules Civ.Proc.Rule 4(f)(C)(ii), 28 U.S.C.A.

**[9] Constitutional Law 92 €═3963**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings
         92k3961 Jurisdiction and Venue
            92k3963 k. Personal Jurisdiction in General. Most Cited Cases
   (Formerly 92k305(4.1))

Due process requires that before court may exercise personal jurisdiction over a defendant, there must be more than notice to defendant, that is, there also must be basis for defendant's amenability to service of summons; absent consent, this means there must be authorization for service of summons on defendant. U.S.C.A. Const.Amend. 5.

**[10] Federal Civil Procedure 170A €═493**

170A Federal Civil Procedure
   170AIII Process
      170AIII(B) Service
         170AIII(B)4 Foreign Corporations, Partnerships and Associations
            170Ak493 k. Service Outside District of Suit. Most Cited Cases

Service on Organization of Petroleum Exporting Countries (OPEC), without its consent, by international registered mail, return receipt requested, was prohibited by law of Austria, where OPEC resided, and thus could not be accomplished under rule permitting service effectuated "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

general jurisdiction," even though OPEC received actual notice. Fed.Rules Civ.Proc.Rule 4(f)(2)(A), 28 U.S.C.A.

**\*918** Michael Straus, Straus & Boies, LLP, Mark J. Schirmer, Birmingham, AL, Jeffrey A. Bartos, Guerrieri, Edmond & Clayman, Washington, DC, David Boies, Boies, Schiller & Flexner, LLP, Robert J. Dwyer, Armonk, NY, for Plaintiff-Appellant.

Thomas S. Martin, Perry S. Bechky, Kristine A. Huskey, Shaniek Mills Maynard, Jonathan Richard DeFosse, Washington, DC, J. Mark White, White, Dunn & Booker, M. Christian King, Lightfoot, Franklin & White, LLC, Sam C. Pointer, Jr., Birmingham, AL, for Defendant-Appellee.

Gregory S. Coleman, Austin, TX, William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, N. Lee Cooper, Maynard, Cooper & Gale, Birmingham, AL, Carolyn B. Lamm, White & Case, Louis George Ferrand, Thomas C. Green, Sidley & Austin, William J. Kolasky, Jr., Washington, DC, Thomas J. O'Sullivan, New York City, for Amici Curiae.

Appeal from the United States District Court for the Northern District of Alabama.

Before ANDERSON, BARKETT and RONEY, Circuit Judges.

BARKETT, Circuit Judge:

Prewitt Enterprises, Inc. ("Prewitt") appeals from the dismissal of its complaint against the Organization of the Petroleum Exporting Countries ("OPEC") for insufficient service of process and from the denial of its motion for alternative service of process. Prewitt's complaint against OPEC alleged a violation of the Sherman Act, 15 U.S.C. § 1,[FN1] for illegal price-fixing agreements on production and export of crude oil and claimed equitable relief pursuant to the Clayton Act, 15 U.S.C. § 26.[FN2] Because OPEC initially did not respond to the complaint, the district court entered a default final judgment against OPEC enjoining it from entering into, implementing or enforcing any agreements to fix and control the production and export of crude **\*919** oil for one year. OPEC then appeared and moved to vacate the default judgment and injunction on the grounds that OPEC had never been properly served with process, and thus, the court lacked jurisdiction over it. The district court concluded that, because OPEC resides in Austria and the applicable Austrian law prohibits service without OPEC's consent, Prewitt's complaint must be dismissed for lack of jurisdiction. We agree and affirm the dismissal of Prewitt's complaint for lack of jurisdiction because service of process on OPEC has not been effectuated. We also affirm the district court's denial of alternative service of process because, in this case, there are no means available for service upon OPEC under the Federal Rules of Civil Procedure.

> FN1. 15 U.S.C § 1 states that:
> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

> FN2. 15 U.S.C. § 26 provides that:
> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws ... when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

353 F.3d 916

353 F.3d 916, 2003-2 Trade Cases P 74,235, 57 Fed.R.Serv.3d 558, 17 Fla. L. Weekly Fed. C 125
**(Cite as: 353 F.3d 916)**

Page 4

an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue.... In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

I. BACKGROUND

Prewitt is a corporation organized and existing under the laws of Alabama with its principal place of business in Birmingham, Alabama. Prewitt purchases substantial quantities of gasoline and other refined petroleum products for resale at its Eastwood Texaco Service Center gasoline station.

OPEC is an intergovernmental organization originally established in 1960 via resolutions promulgated at the Conference of the Representatives of the Governments of Iran, Iraq, Kuwait, Saudi Arabia and Venezuela in Baghdad, Iraq. The principal aim of OPEC is "the co-ordination and unification of the petroleum policies of Member Countries and the determination of the best means for safeguarding their interests, individually and collectively." OPEC Stat. art. 2(A) (2000). Presently, OPEC's membership consists of: Algeria, Indonesia, Iran, Iraq, Kuwait, Libya, Nigeria, Qatar, Saudi Arabia, the United Arab Emirates and Venezuela. Since September 1, 1965, OPEC has been headquartered in Vienna, Austria. Its relationship with the Austrian government is governed by the Agreement Between the Republic of Austria and the Organization of the Petroleum Exporting Countries Regarding the Headquarters of the Organization of the Petroleum Exporting Countries, February 18, 1974, *BGBL* 1974/382 ("Austrian/OPEC Headquarters Agreement" or "Headquarters Agreement").

Prewitt filed a complaint with the district court against OPEC on behalf of itself and as the representative of all persons or entities who have indirectly purchased petroleum or petroleum products in the United States since March 1999. Prewitt claimed that OPEC has been coordinating an international conspiracy through agreements among its Member States and non-OPEC members to limit the production and export of oil in order to fix world oil prices above competitive levels. Prewitt argued that these agreements constitute violations of United States antitrust laws, specifically the Sherman and Clayton Acts, and have resulted in a substantial and adverse impact on United States trade and commerce. Prewitt claimed that as a result of OPEC's illegal conduct, its own acquisition and inventory costs for gasoline have increased significantly. Consequently, Prewitt requested that the court declare the OPEC-coordinated agreements illegal under United States law, enjoin implementation of the agreements, grant any other appropriate equitable relief, and award costs of the suit against OPEC for injuries sustained by Prewitt.

Prewitt attempted service on OPEC by requesting that the trial court send a copy of the complaint to OPEC by international registered mail, return receipt requested. The court clerk did so, mailing Prewitt's summons and complaint to OPEC at its headquarters in Vienna. The pleadings were signed for, stamped "received" by **\*920** OPEC's Administration and Human Resources Department, and forwarded to the Director of OPEC's Research Division as well as other departments including the Secretary General's office. Ultimately, the Secretary General decided that the OPEC Secretariat would not take any action with regard to the summons and complaint.

Without the participation of OPEC, the district court certified a class defined as all persons or entities who purchased refined petroleum products in the United States from March 1999 to the present and entered a default final judgment and order of injunction against OPEC. The court found that there was a conspiracy between OPEC, its Member States, and non-OPEC members, namely Norway, Mexico, the Russian Federation and Oman, to fix and control crude oil prices; that the agreements coordinated and implemented by OPEC were illegal under United States antitrust laws; that OPEC's il-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

353 F.3d 916
353 F.3d 916, 2003-2 Trade Cases P 74,235, 57 Fed.R.Serv.3d 558, 17 Fla. L. Weekly Fed. C 125
**(Cite as: 353 F.3d 916)**

Case 1:08-cv-00642   Document 14-4   Filed 04/03/2008   Page 5 of 13   Page 5

legal conduct has resulted in substantial and adverse impact on United States trade and commerce of approximately $80-120 million per day; and that OPEC and those acting in concert with OPEC should be enjoined from entering into, implementing, and enforcing any further oil price-fixing agreements for a period of twelve months. Copies of the court's orders were delivered to each of the United States embassies for the Member States of OPEC.

In response, OPEC made a special appearance and filed a motion to set aside the default judgment and stay its enforcement pursuant to Rule 60(b)(1), (4), (5) and (6) [FN3] of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which the district court granted, vacating the default judgment and injunction.[FN4] OPEC then filed a motion to dismiss Prewitt's complaint on various grounds including insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5).[FN5] The district court dismissed the case without prejudice, finding that Prewitt had failed to serve OPEC its summons and complaint properly under the Federal Rules. Prewitt then filed a motion to pursue alternative means of effecting service or to amend the judgment. The district court denied the motion finding that, in this case, OPEC cannot be effectively served with process.

> FN3. Fed.R.Civ.P. 60(b) provides, in pertinent part:
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding, for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (4) the judgment is void; (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

> FN4. Prewitt also appeals the district court's decision to vacate the default judgment and injunction. We need not reach that issue in light of our disposition of this case.

> FN5. Fed. R.Civ. P. 12(b)(5) provides that: Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto ... except that the following defenses may at the option of the pleader be made by motion: ... (5) insufficiency of service or process....

## II. DISCUSSION

[1][2][3] We review the district court's grant of a motion to dismiss for insufficient service of process under Fed.R.Civ.P. 12(b)(5) by applying a *de novo* standard to the law and a clear error standard to any findings of fact. *S & Davis Int'l, Inc. v. Republic of Yemen,* 218 F.3d 1292, 1298 (11th Cir.2000). We generally review the district court's interpretation of Fed.R.Civ.P. 4 on service of process as a matter of law *de novo. Vencor Hosp., Inc. v. *921 Standard Life & Accident Ins.,* 279 F.3d 1306, 1308 (11th Cir.2002). Likewise, the district court's interpretation of foreign law in determining sufficiency of service of process is subject to *de novo* review. *United States v. McNab,* 331 F.3d 1228, 1240 (11th Cir.2003) (citing *United States v. Gecas,* 120 F.3d 1419, 1424 (11th Cir.1997) (*en banc* )). However, we join our sister circuit in holding that the district court's denial of a motion for alternative service of process under Fed.R.Civ.P. 4(f)(3) is subject to an abuse of discretion standard because the plain language of the rule stipulates that the district court "may" direct alternative means of service. *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir.2002).

The threshold issue in this case is whether OPEC has been effectively served under the Federal Rules of Civil Procedure. If it has not, we must then determine whether extraterritorial service of process on OPEC may be effectuated at all under the circumstances here. By definition, "service of summons is the procedure by which a court having ven-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 444-45, 66 S.Ct. 242, 90 L.Ed. 185 (1946). A court is required to have personal jurisdiction under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution "as a matter of individual liberty" so that "the maintenance of the suit ... [does] not offend 'traditional notions of fair play and substantial justice.' " *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

[4][5] There are two rules of federal civil procedure that apply to service of process upon an international entity located outside of United States jurisdiction: Fed.R.Civ.P. 4(f) (Service Upon Individuals in a Foreign Country) and Fed.R.Civ.P. 4(h) (Service of Process Upon Corporations and Associations). The latter governs service on unincorporated associations located outside of the United States and provides that:

> Unless otherwise provided by federal law, service upon a[n] ... unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected: ...
>
> (2) in a place not within any judicial district of the United States *in any manner prescribed for individuals by subdivision (f)* except personal delivery .... (emphasis added).

Fed.R.Civ.P. 4(h)(2). Thus, an "unincorporated association"[FN6] headquartered outside **\*922** of the United States that is (1) subject to suit under a common name[FN7] and (2) has not waived service[FN8] may be served in any manner authorized under Fed.R.Civ.P. 4(f) for individuals in a foreign country except for personal delivery.

> FN6. The district court treated OPEC as an unincorporated association pursuant to Fed.R.Civ.P. 17(b)(1). Under this Circuit's jurisprudence, an unincorporated association is defined as "a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise." *Penrod Drilling Co. v. Johnson,* 414 F.2d 1217, 1222 (5th Cir.1969) (holding that labor unions, agricultural societies, co-ops, banking associations, charitable associations, news associations, and religious societies may all be considered unincorporated associations). *But see Dean v. Barber,* 951 F.2d 1210, 1215 n. 4 (11th Cir.1992) (holding that a government unit, subdivision or agency may not be considered an unincorporated association). *Cf. Hennessey v. Nat'l Collegiate Athletic Ass'n,* 564 F.2d 1136 (5th Cir.1977) (treating a college athletic association in an antitrust suit as an unincorporated association even where some of its members were state institutions rather than individuals).

In this case, OPEC is an administrative body joined together for the common purpose of acting on behalf of the business and political interests of its members with regard to their petroleum resources. While its members are sovereign nation states rather than private individuals, OPEC is not a governmental unit or subdivision and is not incorporated under the laws of any one Member State. Thus, under the facts of this case, we agree that it is amenable to the designation of "unincorporated association." As the court in *Penrod* has found, the term unincorporated association is one that is "generic" and of "vague meaning" with few "sharp legal boundaries." *Penrod Drilling Co.,* 414 F.2d at 1222-23.

> FN7. In this case, it is clear that suit was brought against OPEC, the common name for this international organization of sovereign oil-producing foreign states.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN8. No evidence has been presented by either party that any waiver of service was "obtained and filed" from OPEC.

[6][7] Turning to Fed.R.Civ.P. 4(f), the first relevant section provides that:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:
>
>> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents....

Fed.R.Civ.P. 4(f)(1). In this case, no other means of service has been "otherwise provided by federal law" nor is there an "internationally agreed means reasonably calculated to give notice such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents...." The federal laws pertaining to service of process on a foreign entity are codified in 28 U.S.C. §§ 1602 *et seq.,* the Foreign Sovereign Immunities Act ("FSIA"), and 22 U.S.C. §§ 288 *et seq.,* the International Organizations Immunities Act ("IOIA"). The parties agree that neither of these federal laws apply to OPEC in this case.FN9 The parties likewise agree that there is no international agreement that stipulates the appropriate means of service.FN10

> FN9. It is clear that OPEC is not a foreign state or political subdivision of a foreign state pursuant to § 1608 of the FSIA. OPEC also fails to qualify under § 288 of the IOIA because the statute only applies to international organizations in which the United States participates pursuant to a treaty or an act of Congress. *Cf. Int'l Assoc. of Machinists & Aerospace Workers v. OPEC,* 477 F.Supp. 553 (C.D.Cal.1979), *aff'd* 649 F.2d 1354 (9th Cir.1981) (dismissing OPEC as a party to the case because it held that OPEC could not be legally served under the FSIA or IOIA). We note that under the current state of our federal laws, the individual Member States of OPEC are afforded immunity from suit brought for damage caused by their commercial activities when they act through OPEC. However, acting individually, a country would be subject to suit under the commercial activity exception of the FSIA § 1605(a)(2) which provides that a foreign state has no immunity from suit in cases "in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

> FN10. The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters Done at The Hague, the Netherlands, November 15, 1965, 658 U.N.T.S. 163 ("Hague Service Convention"), provides rules governing service of process between signatory states. However, while the United States is party to the Hague Service Convention, Austria is not. Austria *is* party to the Hague Convention on Civil Procedure, entered into force March 1, 1954, 286 U.N.T.S. 265, 1 Am. J. Comp. L. 282 (1952) (translation), but the United States is not.

**\*923** Thus, we must look to the remainder of Fed.R.Civ.P. 4(f), which provides for other methods by which an unincorporated association may be served in the absence of relevant federal law or in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ternational agreements:

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

(B) as directed by the foreign authority in response to a letter rogatory or letter of request; or

(C) unless prohibited by the law of the foreign country, by

(i) delivery to the individual personally of a copy of the summons and the complaint; or

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

Fed.R.Civ.P. 4(f)(2) and (3).

[8] Prewitt originally chose to attempt service of process on OPEC under Fed.R.Civ.P. 4(f)(C)(ii). However, the method set forth under that provision applies only if it is not prohibited by the law of the foreign country. Based on the evidence presented,[FN11] the district court correctly found that service on OPEC was prohibited by the law of Austria. Article 5(2) of the Austrian/OPEC Headquarters Agreement provides that: "the service of legal process ... shall not take place within the [OPEC] headquarters seat except with the express consent of, and under conditions approved by, the Secretary General."[FN12] Since the Headquarters Agreement was *924 enacted into law by resolution of the Austrian Parliament and published in the Austrian Official Gazette pursuant to the Austrian Constitution, the district court found it to be an integral part of Austrian law.[FN13] Thus, because service was prohibited by Austrian law, Prewitt could not have effectively served OPEC under Fed.R.Civ.P. 4(f)(C)(ii).

FN11. Evidence on service of process in Austria under Austrian and international law was considered by the district court pursuant to Fed.R.Civ.P. 44.1 (Determination of Foreign Law), which provides that:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

The evidence before the district court included: sections of Austrian law from the Austrian Constitution, the Austrian Service Act, and the Austrian Code of Civil Procedure; articles of international treaties such as the Vienna Convention on the Law of Treaties, entered into force January 27, 1980, 1155 U.N.T.S. 331, and the Austrian/OPEC Headquarters Agreement; expert affidavits and testimony from Austrian lawyers and professors on Austrian law; correspondence between Austrian law experts; "Notes Verbales" between the Austrian Ministry of Foreign Affairs and OPEC; correspondence from the Austrian Embassy to the District Court for the Northern District of Alabama on service of process in Austria; the United States State Department circular on service of process abroad; the Austrian Foreign Ministry website on Austrian law; and academic treatises on transnational litigation.

FN12. As noted in some of the *amicus curiae* briefs submitted to this Court, this provision is commonly found in numerous

other Headquarters Agreements between sovereign states and international organizations around the world. *See e.g.* Headquarters Agreement between the Organization of American States and the Government of the United States of America, signed May 14, 1992, art. IX, § 1, <http://www.oas.org/legal/english/docs/BilateralAgree/us/ sedeusa.htm> ("The service and execution of legal process ... may take place within the Headquarters only with the consent of and under conditions approved by the Secretary General."); Agreement Regarding the Headquarters of the Food and Agriculture Organization of the United Nations, signed October 31, 1950, art. III, § 7(a), 1409 U.N.T.S. 23602 ("The service of legal process ... may take place within the headquarters seat only with the consent of, and under conditions approved by, the Director-General."); and the Agreement Relating to the Headquarters of the International Bauxite Association between the International Bauxite Association and Jamaica, signed November 5, 1975, art. III, § 4, 1021 U.N.T.S. 15000 ("The service of legal process ... may take place within the Headquarters premises only with the express prior consent of and under conditions approved by the Secretary General.")

FN13. We reject Prewitt's argument that because the Headquarters Agreement is not a criminal statute with criminal sanctions but merely a "diplomatic accommodation," it does not actually "prohibit" service upon OPEC within the meaning of Fed.R.Civ.P. 4(f)(2)(C)(ii). The Headquarters Agreement has been incorporated into Austrian law and need not provide for criminal sanctions to enforce its prohibition of service upon OPEC without OPEC's consent. We also reject Prewitt's argument that Article 5(2) of the Headquarters Agreement only bars physical intrusions into the OPEC headquarters seat by the Republic of Austria or by persons exercising public authority within Austria and thus does not apply to service by international mail from someone outside of Austria. Nothing in the plain language of Article 5(2) of the Headquarters Agreement indicates that the drafters intended for such a narrow interpretation.

[9] Prewitt nonetheless suggests that we should liberally construe the formal requirements for service under the Federal Rules because OPEC received actual notice but simply chose to "ignore the whole thing." Br. of Appellant at 23. However, we find no support for such an argument.FN14 Due process under the United States Constitution requires that "before **\*925** a court may exercise personal jurisdiction over a defendant, there must be *more than* notice to the defendant ... [t]here also must be a *basis* for the defendant's amenability to service of summons. Absent consent, this means there must be *authorization* for service of summons on the defendant." *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (emphasis added).FN15 In other words, an individual or entity "is not obliged to engage in litigation unless [officially] notified of the action ... under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). In this case, Fed.R.Civ.P.(f)(2)(C)(ii) clearly states that service of process by registered mail is only authorized where it is not prohibited by foreign law. Here, the Headquarters Agreement constitutes Austrian law and, under Article 5(2), expressly prohibits all service of process upon OPEC within the headquarters seat that has not been consented to by its Secretary General. Thus, we agree with the district court that even though OPEC had actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements of Fed.R.Civ.P. 4(f)(2)(C)(ii).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN14. It is true that receipt of actual notice is an important factor in considering whether service of process is adequate. *Hanna v. Plumer,* 380 U.S. 460, 463 n. 1, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (dictum); *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). However in all of the cases cited by Prewitt, the courts were careful to determine that service of process was in substantial compliance with the formal requirements of the Federal Rules; actual notice alone was not enough to allow the court personal jurisdiction over the defendant. *See Sanderford v. Prudential Ins. Co. of America,* 902 F.2d 897 (11th Cir.1990) (holding that service of process was in substantial compliance with Fed.R.Civ.P. 4(b) even though it did not include a return date for the responsive pleading); *Direct Mail Specialists, Inc. v. Eclat Computerized Tech. Inc.,* 840 F.2d 685 (9th Cir.1988) (finding that a corporation's receptionist had sufficient authority to receive service of process as a "managing or general agent" under Fed.R.Civ.P. 4(d)(3) and noting that the president of the company received actual notice of the summons and complaint a day later); *United Food & Commercial Workers Union v. Alpha Beta Co.,* 736 F.2d 1371 (9th Cir.1984) (holding that service was effective under Fed.R.Civ.P. 4(b) even though the summons had a typographical error stating that the defendant had 10 rather than 20 days to answer the complaint); *Banco Latino, S.A.C.A. v. Gomez Lopez,* 53 F.Supp.2d 1273 (S.D.Fla.1999) (finding that personal delivery of service of process on the defendant in Spain was sufficient because it was authorized under Spanish law as required by the Hague Convention and Fed.R.Civ.P. 4(f)(1) and the defendant had actual notice even though he only received a copy of the summons and not the complaint because he departed hastily).

FN15. "Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process." *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983).

[10] Alternatively, Prewitt argues that even if service failed under Fed.R.Civ.P. 4(f)(2)(C)(ii), service by registered mail upon OPEC nonetheless complied with Fed.R.Civ.P. 4(f)(2)(A), which permits service if it is effectuated "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction." The provisions of Austrian law that Prewitt references from Austria's Civil Procedure Code and regulations for service of process by mail relate to service by Austrian courts on persons resident in Austria and abroad. None of these Austrian law provisions directly pertain to service mailed *from abroad* upon international organizations resident in Austria. Prewitt argues that we should look only to the approved "method" of service within the foreign jurisdiction and not to the substance of Austrian law. However, the substance of the law specifically relating to service of process cannot be divorced from the "method" of service. Indeed, §§ 12(1) and 11(2) of the Austrian Service Act specifically address service from authorities abroad upon residents in Austria and trump the more general provisions cited by Prewitt from the Austrian Code of Civil Procedure and regulations for service of process by Austrian courts on residents in Austria or abroad.[FN16] Moreover, the Regulation Regarding the Service of Process by Mail upon Persons Abroad in Civil Proceedings that Prewitt argues applies in this case specifically states that it *does not* apply to service on entities specified under § 11(2) of the Austrian Service Act. Dist. Ct. Doc. 87, Exh. 4B. Section 12(1) (as amended 1990) of the Austrian Service Act requires that:

FN16. Expert Decl. of Dr. Wolfgang Hahnkamper, Dist. Ct. Doc. 56, Exh. 8 at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4.

The service of documents generated by authorities abroad to recipients in Austria shall be carried out in accordance with the existing international conventions, *in the absence of which it has to be done in accordance with this law*.... (emphasis added).

Section 11(2) (as amended 1998) of the Austrian Service Act directly addresses *926 service from abroad upon international organizations such as OPEC requiring that:

the mediation of the Federal Ministry for Foreign Affairs shall be enlisted in undertaking service of process on foreigners or international organizations that enjoy privileges and immunities under international law, regardless of their place of residence or headquarters.

There would be no way for Prewitt to serve OPEC under § 11(2) of the Austrian Service Act because we must assume that if it had gone to the Austrian Federal Ministry of Foreign Affairs, the Ministry would have applied the laws of its own country and obeyed the dictates of the Austrian/OPEC Headquarters Agreement prohibiting service without OPEC's consent.

In response, Prewitt again argues that actual notice can cure defective service of process pursuant to Section 7 of the Austrian Service Act, which provides:

Should defects in service of process occur, service shall be deemed effectuated at the time when the document has actually reached the recipient designated by the authority.

Section 7 (as amended January 1, 1991) of the Austrian Service Act. However, this section has specifically been interpreted in Austria not to apply to defects in service of process that are in breach of the requirements for service under an international agreement such as the Austrian/OPEC Headquarters Agreement.[FN17] Moreover, Section 7 may not cure a failure to obtain OPEC's express consent because under the Austrian law of *lex specialis,* the more specific provision in the Headquarters Agreement for service of process upon OPEC takes precedence over the more general language of the Austrian Service Act. Expert Decl. of Dr. Wolfgang Hahnkamper, Dist. Ct. Doc. 80, Exh. 5 at 416-17, 420-21.[FN18] Finally, Prewitt contends that even if its service by registered mail on OPEC could not be effectuated pursuant to any of the provisions of Fed.R.Civ.P. 4(f)(2), the district court still had the discretion to order service of process pursuant to Fed.R.Civ.P. 4(f)(3), which provides that service may be effected "by *other means* not prohibited by international agreement as may be directed by the court."(emphasis added). We agree with Prewitt that a district court's denial of relief under 4(f)(3) is reviewed under an *927 abuse of discretion standard. However, there is no abuse of discretion here; on the contrary, any circumvention of 4(f)(2)(C)(ii) by the district court in directing service again by registered mail would constitute such an abuse. On these facts, we cannot read 4(f)(3) as permitting that which has already been specifically prohibited under 4(f)(2).

> FN17. The Austrian Administrative Court ("Verwaltungsgerichtshof") has held that a breach of a rule in an international agreement on service of process was not a "simple defect of service" that could be cured by Section 7 of the Austrian Service Act. The court stated the rule that:

[S]imple consideration of the generally acknowledged rules of public law, which apply according to Art. 9(1) B-VG [Federal Constitutional Act] as constituents of Federal law, and which include the principle that contracts are to be performed in good faith ... prohibits § 7 of the Service Act from being afforded the content that it should also reform breaches of explicit prohibitions on service contained in international agreements....

Verwaltungsgerichtshof [VwGH] Beschluß, December 18, 1997, No. 97/11/0274 (Aus.).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN18. Prewitt similarly argues that because OPEC failed to immediately reject the pleadings sent to it by international registered mail, return them, or lodge diplomatic protests with the United States, its actual receipt of the pleadings constituted constructive consent or waiver of the protection under Article 5(2) of the Headquarters Agreement that OPEC may only be served where it has expressly consented to service of process. Br. of Appellant at 31 n.9. We reject this argument because Article 5(2) must be read together with Article 9 of the Headquarters Agreement, which provides that "OPEC ... shall enjoy immunity from *every form of legal process* except in so far as in any particular case OPEC shall have *expressly waived* its immunity ... (emphasis added)."

Prewitt then argues that, even if service by registered mail is prohibited by 4(f)(2), other means of giving actual notice, such as fax or e-mail, that are not mentioned in the rule or prohibited by international agreement could be employed to serve OPEC under Fed.R.Civ.P. 4(f)(3), even if the service is contrary to the laws of Austria.[FN19] However, the 1993 Advisory Committee Notes to Fed.R.Civ.P. 4(f)(3) instruct that:

FN19. In support of its argument, Prewitt cites to *Umbenhauer v. Woog,* 969 F.2d 25, 34 (3d Cir.1992), which held that "Rule 4(i)(1) neither explicitly or implicitly requires any deference to foreign governments or the U.S. Department of State in the manner by which service shall be made." However, Fed.R.Civ.P. Rule 4(i)(1) was the predecessor to the current Fed.R.Civ.P. 4(f)(2)(C)(ii) for service of process by registered mail, not Fed.R.Civ.P. 4(f)(3), which is at issue here. In any event, the *Umbenhauer* court pointed out that the 1993 amendments to the Federal Rules on service specifically provided for greater deference generally to foreign law. As the court noted, "the Standing Rules Committee of the Judicial Conference of the United States recently drafted relevant proposed revisions to Fed.R.Civ.P. 4" and that "[i]f proposed Rule 4(f)(2)(C) were in effect today, then contrary to our holding here, the new Rule would preclude a district court clerk from serving process by signed receipt mail on a defendant in a country whose laws forbid that method of service." *Id.* at 33.

Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements.... Inasmuch as our Constitution requires that reasonable notice be given, *an earnest effort* should be made to devise a method of communication that is *consistent with due process* and *minimizes offense to foreign law.*

(emphasis added). Rather than minimizing offense to Austrian law, the failure to obtain OPEC's consent would constitute a substantial affront to Austrian law. We can find no support permitting such a consequence in the face of Austria's direct prohibition of service on OPEC without its consent.[FN20]

The case relied upon as persuasive by Prewitt, *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir.2002), is not at all applicable to the circumstances here. In *Rio,* the court held that the district court did not abuse its discretion by ordering service by email upon an international corporation based in Costa Rica. However, the primary issue in that case was whether Fed.R.Civ.P. 4(f) should be read to create a hierarchy of preferred methods of service of process, requiring a party to attempt service by the methods enumerated in Fed.R.Civ.P. 4(f)(2) before petitioning the court for alternative relief under Fed.R.Civ.P. 4(f)(3). More importantly, the facts supporting the district court's direction of alternative service in *Rio* are completely different from **\*928** the facts here. In *Rio,* the court determined that the defendant, an international internet company doing business in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

353 F.3d 916
353 F.3d 916, 2003-2 Trade Cases P 74,235, 57 Fed.R.Serv.3d 558, 17 Fla. L. Weekly Fed. C 125
**(Cite as: 353 F.3d 916)**

Case 1:08-cv-00642    Document 14-4    Filed 04/03/2008    Page 13 of 13    Page 13

United States, had a viable presence in the United States; that physical personal service had been legally attempted by actually serving a legitimate agent of the defendant in the United States; and that the defendant had evaded the attempted service. The most important distinction, however, is that in *Rio,* there was no discussion of Costa Rican law at all, much less of any prohibitions relating to service of process and thus, no need to take into account the advisory note to Fed.R.Civ.P. 4(f)(3) directing that alternative service of process should minimize offense to foreign law.[FN21]

> FN20. Prewitt also cites to *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 2003 WL 21659368 (S.D.N.Y. July 15, 2003) (unpublished), where again there was no Austrian law explicitly prohibiting service of process on the defendant, an Austrian corporation, without its consent. We do not find this case applicable. *But see Mayoral-Amy v. BHI Corp.,* 180 F.R.D. 456 (S.D.Fla.1998) (declining to authorize service of process by facsimile under Fed.R.Civ.P. 4(f)(3) where doing so would be in contravention of Belize law); *Lord v. Living Bridges,* 1999 WL 528833 (E.D.Pa.1999) (unpublished) (ordering plaintiffs to serve defendants under Fed.R.Civ.P. 4(f)(3) in a manner that was not prohibited by international agreement or applicable Mexican law).

> FN21. We do not say that a district court *never* has discretion to direct service of process under Fed.R.Civ.P. 4(f)(3) that is in contravention of a foreign law. Rather, we are satisfied that under the facts and circumstances of this case, directing service of process would constitute a clear abuse of discretion.

Austrian law clearly provides protection to OPEC as an international organization from all methods of service of process without its consent and also requires that any service of process from abroad be effected through Austrian authorities. In this case, OPEC has made clear that it refuses to consent expressly to service of process by Prewitt; thus, the district court did not abuse its discretion in denying Prewitt's motion to authorize alternative means of service.

### III. CONCLUSION

Based on the foregoing, we AFFIRM the district court's motion to dismiss this case for insufficient service of process and its denial of alternative service of process on OPEC.

C.A.11 (Ala.),2003.
Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries
353 F.3d 916, 2003-2 Trade Cases P 74,235, 57 Fed.R.Serv.3d 558, 17 Fla. L. Weekly Fed. C 125

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.