4 Misc.3d 1020(A) Page 1
4 Misc.3d 1020(A), 791 N.Y.S.2d 870, 2004 WL 1977612 (N.Y.Sup.), 2004 N.Y. Slip Op. 50974(U)
**(Cite as: 4 Misc.3d 1020(A))**

Hypo Bank Claims Group, Inc. v. American Stock Transfer & Trust Co.
N.Y.Sup.,2004.
(The decision of the Court is referenced in a table in the New York Supplement.)
Supreme Court, New York County, New York.
HYPO BANK CLAIMS GROUP, INC. and Peter Wiehs, as a member and representative and individually Plaintiffs,
v.
AMERICAN STOCK TRANSFER & TRUST COMPANY, Global Capital Partners, Inc., and Hypo Alpe Adria Bank, AG Defendants.
No. 604562/2004.

June 28, 2004.

CAROL EDMEAD, J.
*1 In this action for insider trading and securities fraud, plaintiffs Hypo Bank Claims Group, Inc. and Peter Wiehs ("plaintiffs") move by way of an Order to Show Cause dated May 25, 2004 for an order compelling defendants American Stock Transfer & Trust Company, Global Capital Partners, Inc. and Hypo Alpe Adria Bank, AG ("defendants") to preserve, inventory and produce, *inter alia,* certain documents and records relating to a securities fraud scheme allegedly perpetrated by defendants for the purpose of defrauding the plaintiff investors/shareholders.

*Background*

Plaintiffs commenced the instant action by filing a Summons and Complaint For Documents Related To Insider Trading And Certain Other Claims ("the complaint") on May 24, 2004. According to the complaint, plaintiffs, who are residents of the United States, the Republic of Austria and other European countries, are the victims of a scheme to defraud investors and/or shareholders of Global Capital Partners, Inc. ("GCAP") allegedly perpetrated by GCAP and involving Hypo Alpe Adria Bank, AG ("Hypo Bank"). Plaintiffs allege that a substantial stake in and/or amount of GCAP shares, which plaintiffs claim were publicly traded on the NASDAQ market, was held and/or controlled by Hypo Bank. Plaintiffs further allege that defendant American Stock Transfer & Trust Company ("American Stock") was the entity through which sales and transfers of GCAP shares were conducted in the United States for the benefit of GCAP and/or Hypo Bank. According to the complaint, it was this unique situation and access to insider information that enabled GCAP and/or Hypo Bank to trade in GCAP shares in a manner and way that violated both United States and European laws against insider trading. The complaint further alleges that defendants are, should be, or in the normal course of business were in possession of certain documents which plaintiffs allege they need in order to make out and/or prove the elements of their claims, to identify any and all potentially culpable parties and to set forth their claims and alleged damages with the specificity that is required in actions alleging civil and/or criminally negligent activities such as insider trading and other securities violations. Plaintiffs allege that if these documents are not produced plaintiffs will be adversely prejudiced in their ability to make out and prove their claims. According to the complaint, the documents needed by plaintiffs include any and all documents within defendants' possession, custody or control related to Hypo Bank's trading of GCAP shares of stock between the beginning of 1999 and the end of 2001. The complaint concludes by demanding that judgment be entered compelling defendants to produce the aforementioned documents and that judgment for unspecified actual and punitive damages, as well as attorneys' fees, also be entered against defendants for plaintiffs having had to make and prosecute their application for the aforementioned documents.

*The Order to Show Cause*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*2** In support of the May 25, 2004 Order to Show Cause seeking an order compelling defendants to preserve, inventory and produce certain documents relating to and involving a securities fraud scheme allegedly perpetrated by defendants, plaintiffs submit the declaration of their attorney, Edward D. Fagan ("the Fagan Declaration"). According to the Fagan declaration, plaintiffs' emergency application became necessary because of certain statements made by Hypo Bank's Board of Directors on May 21, 2004. Fagan alleges on May 21, 2004 the Board of Directors of Hypo Bank made public statements in Austria designed to attack not only the integrity of the claims being made against Hypo Bank in the United States, but the integrity of the persons making those claims and their attorneys as well. Fagan also states that plaintiffs have information that GCAP and Hypo Bank have, in the past, engaged in a pattern of withholding, altering, concealing, obfuscating and/or spoilating documents and other evidence. Fagan further claims that plaintiffs also have information that GCAP and Hypo Bank have, when implicated in past sensitive, improper, unreported or suspect activities, ordered, organized or cooperated in the destruction, alteration and/or concealment of documents. For these reasons, Fagan contends that if the documents requested by plaintiffs are not preserved, there is a real and imminent risk that those documents will be destroyed, altered, concealed or be otherwise unavailable for use by plaintiffs in the pre-trial, discovery or trial phases of this litigation.

In signing the Order to Show Cause the Court directed that, pending a June 15th hearing on plaintiffs' motion, defendants were restrained from destroying, or allowing to be destroyed, any of the documents sought by plaintiffs' in the Order to Show Cause and the complaint. More importantly, the Court ordered plaintiffs to serve a copy of the Order to Show Cause, together with all supporting papers, as well as plaintiffs' summons and complaint, upon all defendants on or before May 27, 2004 via personal service to defendants' principal places of business. As set forth in the Order to Show Cause, Hypo Bank's principal place of business is Klagenfurt, Austria.

*Hypo Bank's Opposition*

In opposing plaintiffs' Order to Show Cause, Hypo Bank argues that plaintiffs' failure to effectuate valid personal service deprives the Court of the jurisdiction to hear this matter. According to the affidavit of Hans-Joerg Megymorez ("the Megymorez affidavit"), the lead attorney within Hypo Bank's legal department, plaintiffs' counsel, Edward D. Fagan, as well as an Austrian lawyer, appeared at Hypo Bank's headquarters in Klagenfurt, Austria on May 27, 2004 accompanied by members of the Austrian news media. The Megymorez affidavit states that while inside the Hypo Bank lobby Mr. Fagan attempted to hand a number of documents to random Hypo Bank employees. Megymorez states that Mr. Fagan was informed that Hypo Bank did not accept service in such a manner and that his efforts would not result in legal service of process under Austrian law. It was at this point, according to Megymorez, that Mr. Fagan attempted to force a Hypo Bank employee to accept the documents he carrying by grabbing the employee and shoving the documents under the employee's arm. That attempt having failed, Mr. Fagan then exited the Hypo Bank lobby and went outside, at which point Hypo Bank locked its front doors so as to avoid any further interruptions or confrontations. According to the Megymorez affidavit, it was while he was outside the Hypo Bank building, and in the presence of the news media that had accompanied him there, that Mr. Fagan taped the documents he was carrying to the exterior of the Hypo Bank headquarters. The Megymorez affidavit states that on the following day, in accordance with Austrian law, Hypo Bank's Executive Board provided both Mr. Fagan and the Court with formal written notification that Mr. Fagan's attempted service of process was inconsistent with Austrian law, violated the sovereignty of the Austrian State, was ineffective and was not being recognized by Hypo Bank.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** Relying on a Note Verbale No. 224.10/0008e-1.2/2002 ("Note Verbale") drafted by the Austrian Federal Ministry for Foreign Affairs and forwarded to the United States Embassy in Vienna, Hypo Bank argues that service of foreign legal documents in Austria requires the issuance of letters rogatory and a certified German translation of all documents. Hypo Bank contends that Mr. Fagan's attempt to effectuate personal service of process without letters rogatory or a certified German translation by affixing the Order to Show Cause and the summons and complaint to the outside of the Hypo Bank headquarters violates not only the laws of Austria but the New York rules of comity as well. Therefore, because plaintiffs made no effort to comply with Austrian law regarding service of process, Hypo Bank argues, service of process in this action is invalid and personal jurisdiction is improper.

Hypo Bank also argues that plaintiffs' complaint should be dismissed on the theory that it fails to allege any contacts between Hypo Bank and this forum. Hypo Bank contends that, pursuant to CPLR § 302, this Court may exercise personal jurisdiction over a non-domiciliary defendant such as itself only if that non-domiciliary commits a tortious act within New York State or transacts business here. Hypo Bank argues that because plaintiffs have not averred that any of Hypo Bank's alleged tortious conduct occurred in New York, nor identified any business engaged by Hypo Bank in New York, jurisdiction is improper. In support of this argument, Hypo Bank relies on the affidavit of Mag. Gerhard Rieder, who is employed by Hypo Bank as legal advisor to Hypo Bank's Chief Executive Officer. According to Rieder, Hypo Bank (1) does not own personal or real property in New York State; (2) does not have and never did have an office, mailing address, employees or bank accounts in New York; (3) is unaware of any sales to New York consumers; (4) does not conduct business in New York and has not derived any revenue from goods or services sold in New York; (5) has not advertised in New York; (6) has not placed advertisements in any publications with national distribution in the United States; and (7) has not derived substantial revenue from interstate sales. Rieder also states that neither the owners nor the employees of Hypo Bank have traveled to New York for the purpose of conducting business.

Hypo Bank further contends that plaintiffs' complaint for documents should be dismissed because (1) plaintiffs seek the documents requested in their complaint for the improper purpose of ascertaining whether facts exist which would create or support a cause of action against Hypo Bank, which Hypo Bank argues violates CPLR § 3102[c]; (2) there are no facts pleaded in the complaint which indicate that plaintiffs Hypo Bank Claims Group, Inc. and Peter Wiehs have the requisite standing to sue Hypo Bank; and (3) the relief requested in plaintiffs' complaint violates Hypo Bank's rights under the federal Private Securities Litigation Reform Act and the Securities Litigation Uniform Standards Act.

*Plaintiffs' Reply*

**\*4** It is in plaintiffs' reply to Hypo Bank's opposition that this already unusual case enters the realm of the truly bizarre. According to the reply affidavit of Leopold Spitzbart ("the Spitzbart reply affidavit"), who claims to be one of the plaintiffs in this action, there is certain information regarding Hypo Bank which plaintiffs believe is important for the Court to consider when determining how to proceed in this action. Specifically, Spitzbartz states that Hypo Bank is the most powerful bank in the Austrian state of Carinthia, which also happens to the base of power of Mr. Jorg Haider, whom Spitzbartz claims is the Governor of Carinthia and the leader of Austria's racist, anti-Semitic and anti-foreigner right wing political party known as the Freedom Party. The Spitzbartz reply affidavit claims that the majority of shares in Hypo Bank are controlled by Mr. Haider's government and that Mr. Haider and/or his appointees sit on and control Hypo Bank's Supervisory Board. Spitzbartz also

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

states, based upon information plaintiffs have already discovered and are continuing to discover, that Hypo Bank mirrors the racist, anti-Semitic and anti-foreigner political objectives of Mr. Haider, and the Freedom Party and advances those deplorable objectives through discriminatory business policies. According to Spitzbartz, the relevance of the racist, anti-Semitic and anti-foreigner ideologies of Mr. Haider, the Freedom Party and Hypo Bank to this motion is self-evident when one considers the fact that plaintiff Hypo Claims Group, Inc. consists not only of foreign investors, but investors who have racial, ethnic and religious backgrounds that are unacceptable to Hypo Bank. Spitzbartz further contends that the Hypo Bank Board of Directors, through its outside counsel, has directed anti-Semitic statements towards plaintiffs' attorney, Mr. Edward Fagan.

The Spitzbartz reply affidavit also serves as a basis for plaintiffs to request additional relief not originally demanded in the May 25, 2004 Order to Show Cause. First, plaintiffs request that they be permitted to take the deposition of Mr. Rauol Berthaumieu, a former officer of a Hypo Bank subsidiary. According to the Spitzbartz reply affidavit, plaintiffs have uncovered a tape recording in which Mr. Berthaumieu allegedly states that in or about 2001 he was asked by Mr. Wolfgang Kulterer, the then Chief Executive Officer of Hypo Bank, to find a person to murder Mr. Wolfgang Koessner, a former officer of efendant GCAP.[FN1] Mr. Berthamieu has apparently informed plaintiffs that he and his representatives have or know of the existence of documents and witnesses that are relevant to plaintiffs' claims against Hypo Bank and that he is prepared to testify under oath as a "whistle-blower," provided he receives all the of protections this Court is able to provide. The Spitzbartz reply affidavit contends that Mr. Berthamieu's testimony may not be available forever, making it imperative that plaintiffs depose Mr. Berthamieu at the earliest possible date.

FN1. A transcript of the tape recording is attached as an exhibit to the reply declaration of Dr. Gerhard Podovsovnik, an Austrian Doctor of Law working on behalf of plaintiffs. According to Dr. Podovsovnik, he personally transcribed the recording and his transcript is an accurate version of what is contained on the tape recording.

**\*5** Plaintiffs also request that they be permitted to depose Mr. Wolfgang Koessner, the former GCAP officer who was also the target of the alleged murder-for-hire plot discussed *supra.*Like Mr. Berthamieu, Mr. Koessner has informed plaintiffs that he or his representatives have or know of the existence of documents and witnesses that are relevant to plaintiffs' claims against Hypo Bank and that he too is prepared to testify under oath as a "whistle-blower." The Spitzbartz reply affidavit contends that Mr. Koessner's testimony also may not be available forever, making his deposition as imperative as Mr. Berthamieu's.

Plaintiffs further request that they be permitted to compel Dr. Johann Quendler, Hypo Bank's outside counsel, to produce any and all documents in his or his firm's custody, possession or control relating to Messrs. Berthamieu and Koessner. According to Spitzbartz, Dr. Quendler and his firm have discovered documents, taken statements, conducted investigations, and identified witnesses and other evidence in relation to Messrs. Berthamieu and Koessner. Plaintiffs state that none of this evidence is privileged or confidential and that it all must be identified, inventoried and preserved because, given the anti-Semitic public statement recently made by Hypo Bank through Dr. Quendler, there is a risk that the documents and other evidence he and his firm have collected may disappear. According to the Spitzbartz reply affidavit, the Court can order Dr. Quendler's deposition because Dr. Quendler's alleged relationship with a company known as Glock USA, which plaintiffs claim has extensive contracts to provide firearms to the New York City Police Department, makes Dr. Quendler subject to the Court's jurisdiction. The Spitzbartz reply affi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

davit concludes by stating that the Court should allow for deposition of Dr. Quendler so that plaintiffs can identify "additional elements of defendant Hypo Bank's business and assets in New York City and New York State" and secure those assets.

Also included in plaintiffs' reply is the reply declaration of their attorney, Edward D. Fagan ("the Fagan reply declaration"), which was drafted while Mr. Fagan was in Europe and before he had the opportunity to review Hypo Bank's opposition papers. Consequently, the Fagan reply declaration was "submitted in anticipation of some of the arguments defendants may make" regarding the Court's jurisdiction. Much of what is contained in the Fagan reply declaration, however, has little or nothing to do with the issues raised in Hypo Bank's opposition but is instead merely a restatement of what is contained in the Spitzbartz reply affidavit. Unlike the Spitzbartz reply affidavit though, the Fagan reply declaration contains a discussion of five "secret" documents which plaintiffs have apparently obtained from GCAP's former officer, Mr. Koessner, whom Mr. Fagan claims has recently "disappeared." According to Mr. Fagan, these "secret" documents, which are written entirely in German and which are attached as untranslated exhibits to the his reply declaration, are from Hypo Bank's own files. Plaintiffs were able to obtain the documents because they were provided by Hypo Bank to the Austrian Criminal Prosecutor when Hypo Bank was retaliating against Mr. Koessner and "trying to shut him up." Mr. Fagan has submitted these "secret" documents so that the Court will recognize "the bona fides of plaintiffs' claims and how urgent it is that plaintiffs [sic] requested relief be granted." According to Mr. Fagan, each of the "secret" documents shows evidence of fraud, insider trading, trading in restricted stocks, and stock manipulation. Specifically, Mr. Fagan claims that "secret" document number one indicates that "Hypo Bank was a related party to [defendant] GCAP." "Secret" document number two apparently shows that "they had by the end of 1998 more than 25 percent of GCAP's largest shareholder which was General Partners Beteiligungs AG." Mr. Fagan also states that "secret" document number two shows that Hypo Bank owned at least 85,023 shares of GCAP stock which, at some point, were sold to an entity in Liechtenstein. "Secret" document number three is alleged to be a due diligence report drafted by Ernst & Young at Hypo Bank's request. According to Fagan, this due diligence report indicates that General Partners Beteiligungs AG owned 41.8 percent of GCAP. "Secret" document number four is alleged to be a December 12, 1998 letter from the Hypo Bank Managing Board which shows that at a time when Hypo Bank "was a related company ... they were demonstrating their control and domination over the Gernal [sic] Partners Group by nominating bank employees as directors to the General Partners Group." "Secret" document number five is important, Fagan claims, because the "listings of owned shares in the companies" contained in "secret" document number five do not match the listings found in "secret" documents numbers one and two. Fagan contends that these apparent discrepancy in the "secret" documents has led plaintiffs to the conclusion that Hypo Bank was "trading with some entity but not disclosing which entity it was, what shares they were trading, what the prices the shares were traded at and what profits did Hypo Bank make at from trades involving U.S. companies and at the expense of shareholders...." Fagan also states that plaintiffs believe these "secret" documents to be "only the tip of the iceberg." What is clear though, according to the Fagan reply declaration, is that if these documents are not immediately located, inventoried, protected and made available to plaintiffs and the Court, there is a serious risk they will disappear because, as Fagan states, "if the bank officials were prepared to hire a killer to get rid of Koessner ... what is a little document destruction?"

*Hypo Bank's Response*

**\*6** In response to plaintiffs' reply, Hypo Bank reiterates its argument that the Court lacks personal jurisdiction over it because of plaintiffs' failure to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

properly serve process in accordance with Austrian law and because of plaintiffs' failure to establish any contacts between Hypo Bank and New York State. Moreover, Hypo Bank contends that this action belongs in Austria and that plaintiffs' complaint should be dismissed on *forum non conveniens* grounds. Hypo Bank further argues that plaintiffs have not pleaded facts in their complaint that would entitle them to relief because the "secret" documents included in the Fagan reply declaration provide no evidence whatsoever of securities fraud or insider trading on the part of Hypo Bank. Finally, Hypo Bank claims that the deposition of Dr. Quendler, Hypo Bank's outside counsel, which plaintiffs request in both the Spitzbartz reply affidavit and the Fagan reply declaration, is barred by the attorney-client privilege.

*Plaintiffs' Response*

Upon his return from Europe, Mr. Fagan submitted to the Court a letter dated June 14, 2004 which Mr. Fagan wrote as a "brief update" in advance of the June 15th hearing on plaintiffs' Order to Show Cause.[FN2] In his letter Mr. Fagan argues that by addressing and challenging the merits of plaintiffs' underlying claims, Hypo Bank waived any and all jurisdictional defenses it may have had. Mr. Fagan also contends that when he traveled to Austria to serve process on Hypo Bank, Hypo Bank directed its security officers to interfere with and block his ability to serve that process. Mr. Fagan claims that Hypo Bank knew he was coming to their headquarters and intentionally locked their doors. Finally, Mr. Fagan argues that this Court can obtain jurisdiction over Hypo Bank based upon the recent Supreme Court ruling in *Republic of Austria et al, v. Maria v. Altman,* 541 U.S. (2004), which Mr. Fagan claims stands for the proposition that courts of the United States can obtain jurisdiction over organs of the Austrian government in cases involving the unlawful, fraudulent or wrongful taking of property.

> FN2. It should be noted that following the June 15th hearing on plaintiffs' Order to Show Cause, Mr. Fagan presented the Court with yet another letter in which he requested that the Court reserve decision on the issue of the Court's jurisdiction over Hypo Bank. The Court has not considered the arguments raised in Mr. Fagan's June 15th letter, however, because, with the exception of Mr. Fagan's June 14th letter, the Court does not and will not entertain letter applications.

*Analysis*

There are two components or constitutional predicates of personal jurisdiction. The first component, and the one most critical to this inquiry, involves service of process and implicates the due process requirements of notice and opportunity to be heard (*Keane v. Kamin,* 94 N.Y.2d 263, 265, 701 N.Y.S.2d 698, 723 N.E.2d 553 [1999] ). The second component of personal jurisdiction, known as the jurisdictional basis, involves the power, or reach of a court over a party so as to bind that party to the court's determination (*id.*). These components are independent of one another in the sense that "service of process cannot by itself vest a court with jurisdiction over a non-domiciliary served outside New York State, however flawless that service may be"(*id.*). In addition, there must also be a constitutionally adequate connection between the defendant, the State and the action before the jurisdictional basis component of personal jurisdiction is satisfied (*id.*). Here, however, the Court need not determine whether a constitutionally adequate connection exists between Hypo Bank, New York State and the instant action because plaintiffs, by their unwillingness to serve Hypo Bank with process in accordance with the laws of Austria, have failed to satisfy the service of process component of personal jurisdiction.

*7 Personal service of process on a corporation, which was the method of service plaintiffs were ordered to follow here when serving Hypo Bank with the Order to Show Cause and the summons and complaint, is governed by CPLR § 311 [a][1]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which requires that service of process be delivered "upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."[FN3] However, in cases involving a foreign corporation having its principal place of business overseas, the doctrine of comity trumps CPLR § 311[a][1] and requires that service of process be effectuated not according to New York law, but in compliance with the laws of the sovereignty where the foreign corporation is located (*see generally East Continental Gems, Inc. v. Yakutiel,* 153 Misc.2d 883, 884, 582 N.Y.S.2d 594 [Sup Ct, N.Y. Cty 1992] [stating that it is implicit within Business Corporation Law § 307 that to be valid, service of process upon a foreign corporation must not violate the sovereignty of a foreign country]; *De Torres v. Arocena,* 155 Misc.2d 52, 587 N.Y.S.2d 495 [Sup Ct, N.Y. Cty 1992] [holding that service of Orders to Show Cause and a summons and complaint on a party in Uruguay was deficient under the Inter-American Convention on Letters Rogatory because plaintiff failed to comply with Uruguayan law] ); *Low v. Bayerische Motoren Werke, A.G.,* 88 A.D.2d 504, 505, 449 N.Y.S.2d 733 [1st Dept 1982] [stating that jurisdiction was not properly obtained over a German automobile manufacturer because service of process pursuant to Business Corporation Law § 307 would have been in violation of an international treaty]. Thus, in this case, comity demands that plaintiffs' service of the Order to Show Cause and the summons and complaint be effectuated according to mandates of the Note Verbale, which plaintiffs have not challenged as being improper and which the Court takes judicial notice of pursuant to CPLR §§ 4511[b] and [d].[FN4] According to the Note Verbale, "the Republic of Austria, like many other European civil law countries, maintains the view that the service of legal documents is a governmental act performed in the exercise of sovereign authority." Therefore, in order to avoid service of process that is defective under Austrian law, "service of foreign legal documents in Austria should be effected by letters rogatory through diplomatic channels, i.e. with the assistance of the Federal Ministry for Foreign Affairs...." Moreover, the Note Verbale indicates that service of foreign legal documents written in a foreign language and not accompanied by a certified German translation is "only permissible provided the recipient is willing to accept" such service.

> FN3. CPLR § 311[a][1] also provides that a "business corporation may also be served pursuant to section ... three hundred seven of the business corporation law." Business Corporation Law § 307 provides that when an unauthorized foreign corporation is subject to the personal jurisdiction of the courts of this state, "process against such foreign corporation may be served upon the secretary of state as its agent."

> FN4. CPLR § 4511[b] states that "every court may take judicial notice without request of ... the laws of foreign countries or their political subdivisions. According to CPLR § 4511[d], "in considering whether a matter of law should be judicially noticed ... the court may consider any ... document ... whether offered by a party of discovered through its own research."

Plaintiffs do not dispute the fact that service of the Order to Show Cause and the summons and complaint was not effected by letters rogatory through diplomatic channels or accompanied by a certified German translation. In fact, plaintiffs' attorney, Mr. Fagan, readily admits in his June 14, 2004 letter that he posted his clients' Order to Show Cause on the door of the Hypo Bank building. Instead plaintiffs argue that they were forced to resort to this unusual method of service because of Hypo Bank's efforts to interfere with and block Mr. Fagan's attempt to serve process. Even if one were to assume, though, that Hypo Bank did interfere with Mr. Fagan's attempt to serve the Order to Show Cause and the summons and complaint, that interference does not adequately explain why, from the outset, plaintiffs' service of process did not in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

clude letters rogatory and was not effected with the assistance of the Austrian Federal Ministry for Foreign Affairs. Nor does Hypo Bank's alleged interference explain why plaintiffs failed to include a certified German translation with their foreign legal papers. Had Hypo Bank interfered with a good faith attempt by plaintiffs to serve process in accordance with Austrian law, plaintiffs would have been justified in moving the Court, pursuant to CPLR § 311[b], for permission to use a substituted method of service.[FN5] However, because plaintiffs chose to disregard the provisions of the Note Verbale from the very start, the attempt by their attorney to serve Hypo Bank with the Order to Show Cause and the summons and complaint by attaching those documents to the Hypo Bank building was unwarranted, ineffective and in direct contravention of the rules of comity recognized by courts of this State.

> FN5. CPLR § 311[b] states "if service upon a ... foreign corporation within the one hundred twenty days allowed by section three hundred six-b of this article is impracticable ... service upon the corporation may be made in such manner ... as the court, upon motion without notice, directs."

**\*8** Moreover, plaintiffs' contention that this Court can obtain jurisdiction over Hypo Bank, which plaintiffs claim is an organ of the Austrian government, pursuant to the recent United States Supreme Court case of *Republic of Austria et al, v. Maria v. Altman,* 541 U.S. ---- (2004), is without merit. The sole issue resolved in *Altman* was "whether the Foreign Sovereign Immunities Act of 1976 ("Act"), 28 U.S.C. § 1602, which grants foreign states immunity from the jurisdiction of federal and state courts but expressly exempts certain cases, including "cases ... in which rights in property are taken in violation of international are in issue," applies to claims that are based on conduct that occurred before the Act's enactment, and even before the United States adopted the so-called "restrictive theory" of sovereign immunity in 1952"(*id.*). Because the retroactive application of the Federal Sovereign Immunities Act has no bearing whatsoever on whether or not plaintiffs effectuated service of process on Hypo Bank in accordance with the laws of Austria, the *Altman* case is utterly irrelevant to this action.

Having determined that service of process was not properly made, the Court must next determine whether Hypo Bank made an appropriate and timely objection to the Court's lack of personal jurisdiction (*Bank Hapoalim, B.M. v. Kotten Machine Co.,* 151 A.D.2d 374, 376, 543 N.Y.S.2d 75 [1st Dept 1989] )."A defense based on lack personal jurisdiction is deemed waived if the defendant fails to assert it, with specificity, in its answer or in connection with a preanswer motion based upon a ground set forth in CPLR § 3211[a]" (*Interlink Metals and Chemicals, Inc. v. Kazdan,* 222 A.D.2d 55, 58, 644 N.Y.S.2d 704 [1st Dept 1996] ). The Court notes that this case is procedurally unusual in that plaintiffs filed their summons and complaint on May 24, 2004 and then, on May 25, 2004, immediately moved by way of an Order to Show Cause to compel defendants to preserve, inventory and produce the very same documents and records demanded by plaintiffs in their complaint. Plaintiffs' nearly contemporaneous filing of both the summons and complaint and the Order to Show Cause is the reason why the Court directed plaintiffs to serve those documents on Hypo Bank simultaneously and also explains why Hypo Bank has not yet had the opportunity to make a preanswer motion to dismiss plaintiffs' complaint for lack of personal jurisdiction or to raise that defense in its answer. However, in keeping with the theory that the affirmative defense of lack of personal jurisdiction must be raised in a defendant's first responsive paper, Hypo Bank specifically, and properly, asserted the of lack of personal jurisdiction defense in its opposition to plaintiffs' Order to Show Cause. Accordingly, Hypo Bank's objection to the Court's personal jurisdiction was both appropriate and timely.

Furthermore, plaintiffs' claim that Hypo Bank

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

waived its lack of personal jurisdiction defense by also challenging the merits of plaintiffs' underlying claims is unfounded. In furtherance of their waiver argument plaintiffs quote the following language: "when a party in its papers challenges the merits of the underlying-the party waives the jurisdictional defenses and has made a general appearance in the case."As support for this quotation plaintiffs refer the Court to CPLR § 2201 and the case of *Eastman Kodak v. Miller & Miller Consulting,* 195 A.D.2d 591, 601 N.Y.S.2d 10 [2d Dept 1993] ). Unfortunately, neither the statutory provision nor the case-law cited by plaintiffs contains the quoted language. As a matter of fact, neither CPLR § 2201, which permits the court in which an action is pending to grant a stay of the proceedings, nor *Eastman Kodak,* 195 A.D.2d at 591, 601 N.Y.S.2d 10, which concerns personal service of process on a corporation, have anything at all to do with the question of when a defendant waives the defense of lack of personal jurisdiction. Moreover, the quoted language relied upon by plaintiffs, whatever its source, is an inaccurate statement of the law (*compare Calloway v. National Services Industries, Inc.,* 93 A.D.2d 734, 735461 N.Y.S.2d 280 [1st Dept 1980] [participation in the defense of an action does not waive a defense of lack of personal jurisdiction contained in the answer]; *Turkish v. Turkish,* 126 A.D.2d 436, 439, 510 N.Y.S.2d 582 [1st Dept 1987] [defendant did not waive his objection to the lack of personal jurisdiction by actively defending on the merits and cross-moving for affirmative relief]; *Williams v. Uptown Collision,* 243 A.D.2d 467, 467, 663 N.Y.S.2d 88 [2d Dept 1997] [neither defendants' counterclaim for indemnification nor their participation in discovery constituted a waiver of the defense of lack of personal jurisdiction asserted in their answer] ). Therefore, by challenging the merits of plaintiffs' underlying claims in its opposition to the Order to Show Cause, Hypo Bank did not waive the affirmative defense of lack of personal jurisdiction.

**\*9** Accordingly, it is hereby

ORDERED that plaintiffs' Order to Show Cause dated May 25, 2004 is denied without prejudice for plaintiffs' failure to effectuate proper service of process upon all parties.

This constitutes the decision and order of the Court.

N.Y.Sup.,2004.
Hypo Bank Claims Group, Inc. v. American Stock Transfer & Trust Co.
4 Misc.3d 1020(A), 791 N.Y.S.2d 870, 2004 WL 1977612 (N.Y.Sup.), 2004 N.Y. Slip Op. 50974(U)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.