UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW ABBOTT, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 08 C 642 |
| v. ) | |
| ) | Judge John W. Darrah |
| STARLINGER NORTH AMERICA, INC. and ) | |
| MAPLAN MASCHINEN und TECHNISCHE ) | |
| ANLAGEN PLANUNGS und FERTIGUNGS ) | |
| Gesellschaft m.b.H., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Abbott suffered a workplace injury to his hand while using a machine that had been manufactured by Defendant Maplan Maschinen und Technische Anlagen Planungs und Fertigungs Gesellschaft m.b.H. ("Maplan") and sold by Defendant Starlinger North America, Inc. ("Starlinger"). Before the Court are Defendants' Motions for Summary Judgement.

## UNDISPUTED FACTS

Abbott was an employee of Nishikawa Standard Company ("Nisco"). (SSMF ¶ 4.)[1] Nisco is a private company that manufactures weather strip and sponge rubber products. (SSMF ¶ 7.) Maplan manufactures rubber-injection molding machines used by Nisco. (SSMF ¶ 4.) Starlinger is the exclusive distributor of Maplan machines in the United States. (ASMF ¶ 1.) Nisco has approximately 285 Maplan machines, all but ten to twelve of which were purchased after 2000. (ASMF ¶ 1.) Nisco uses two types of Maplan machines, the main difference in the types being that one is larger than the other. (ASMF ¶ 1.)

---

[1] In referring to the rule 56.1(a)(3) statements of material facts of Starlinger, Abbott and Maplan, the Court will use the abbreviations SSMF, ASMF and MSMF, respectively.

Maplan's machines initially came with a three-sided steel mesh safety gate. (ASMF ¶ 5.) However, Nisco's manufacturing process requires long pieces of rubber extrusions to be molded together. (ASMF ¶ 2.) Due to the length of the extrusions, the safety gate came into contact with the extrusion, interfering with the molding process and/or damaging the rubber. (ASMF ¶ 2.) To address this problem, Nisco cut holes in the side of the safety gate to allow the extrusions to extend out through the safety gate. (ASMF ¶ 5.) The majority of Nisco's Maplan machines were used for long extrusions and thus required the modification. (ASMF ¶ 5.)

Starlinger became aware that Nisco was cutting holes in the safety gate by at least 2002. (ASMF ¶ 6.) Starlinger prepared a service report indicating that the cutouts were unsafe. (ASMF ¶ 6.) Nisco, Starlinger and Maplan engaged in communications regarding possible solutions to the extrusion/safety gate problem. (ASMF ¶ 6.) Starlinger informed Maplan that Nisco wanted Maplan to provide a safety gate that had holes in place. (ASMF ¶ 7.) Maplan responded that they had "no really safe and properly working solution" and never made a recommendation or proposal to address the problem. (ASMF ¶ 7.)

Nisco suggested a plexiglass or Lexan insert on the right and left sides of the safety gate as a possible solution. (ASMF ¶ 8.) Plexiglass was used because it was easier to cut than steel.[2] (ASMF ¶ 8.) Maplan then designed a safety gate with plexiglass on the right and left sides and sold machines with the modified safety gate to Nisco. (ASMF ¶¶ 8, 10.)

Starlinger installed Maplan Machine 20401763 ("the Machine") at Nisco's Bremen facility on February 15, 2005. (SSMF ¶ 11; MSMF ¶ 2.) However, Nisco did not place the

---

[2]Starlinger denies that it knew Nisco's reason for the plexiglass inserts. Defendants assert that the plexiglass was meant to improve visibility. (Starlinger Response to ASMF ¶ 7, SSMF ¶ 12, MSMF ¶ 4.)

2

Machine into service until approximately one year after it was installed. (SSMF ¶ 15; MSMF ¶ 7.) At the time it was installed, the Machine had a three-sided safety gate with plexiglass inserts bolted onto its left and right sides. (SSMF ¶¶ 4, 10.) However, Nisco modified the safety gate of the Machine, first by cutting holes in the plexiglass and then by replacing the entire metal and plexiglass safety gate with a Lexan shield that was not manufactured by Maplan and was not original to the Machine. (SSMF ¶¶ 20, 22, 26.)

Abbott worked as a molder/clip operator in Nisco's facility in Bremen, Indiana. (SSMF ¶ 6.) Abbott's job responsibilities included operating rubber-injection molding machines. (SSMF ¶ 6.) On July 21, 2006, just after 8:00 a.m., Abbott was starting his third consecutive four-hour shift. (SSMF ¶ 33.) Immediately before the injury, Abbott was completing the process of molding a piece of rubber at the Machine. (SSMF ¶ 33.) As Abbott reached through the hole in the safety gate to remove some dried rubber material, known as "flash," from the press, the Machine closed, catching Abbott's right hand. (ASMF ¶ 12, SSMF ¶ 33.) Abbott's hand was trapped inside as the Machine heated to 400 degrees Fahrenheit. (ASMF ¶ 12.) Abbott was unable to remove his hand for at least seven or eight minutes until his coworkers managed to open the machine by cutting a hydraulic line. (ASMF ¶ 12.) Abbott sustained injuries, including the loss of three fingers on his right hand. (SSMF ¶ 33.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Although the moving party is responsible for demonstrating to the court why there is no genuine issue of

material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the nonmoving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Plaintiff's Amended Complaint states four claims: (1) Strict Product Liability, (2) Negligence, (3) *Res Ipsa Loquitur* and (4) Breach of Warranty. Defendants have moved for summary judgment on all counts. Plaintiff has conceded summary judgment with respect to claim III but opposes Defendants' motions with respect to the other claims.

*Jurisdiction and Choice of Law*

Plaintiff is an Indiana citizen and resident. Starlinger is an Illinois Corporation with its principal place of business in the Northern District of Illinois. Maplan is an Austrian company doing business in the Northern District of Illinois. As the amount in controversy exceeds $75,000, jurisdiction is proper under 28 U.S.C. § 1391.

The parties have not briefed the issue of which state's law governs this dispute. The candidates are Indiana, where the injury occurred, or Illinois, which was where the relationship between Defendants and Nisco was centered and where the Machine was sold. The parties have not identified any relevant divergence between the laws of the two states but, rather, cite cases from both states as it suits them.

When a federal district court sits in diversity, it must apply the choice-of-law principles of the forum state, here, Illinois. *See Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Under Illinois choice-of-law principles, for personal injury suits, there is a presumption that the law of the state where the injury occurred will govern. *Townsend v. Sears, Roebuck and Co.*, 227 Ill.2d 147, 163-64 (2007). This presumption is "overcome only by showing a more or greater significant relationship to another state." *Id.* at 163. Here, the injury occurred in Indiana, and unless the presumption is overcome, Indiana law should apply. Neither party has argued in favor of Illinois law. Abbott is an Indiana resident and has no disclosed ties to Illinois. While the business between Defendants and Nisco may have been largely conducted in Illinois, that consideration is less important since Nisco is not a party to this suit. Indeed, the only relationship between Abbott and Defendants was that Abbott used machines manufactured or

sold by Defendants. That use occurred in Indiana. Therefore, because no greater significant relationship between this suit and Illinois has been shown, Indiana law will apply.

*Claim I - Strict Liability*

Under Indiana law, to establish a *prima facie* case of product liability, a plaintiff must show: "(1) the defective product was unreasonably dangerous; (2) the defect existed at the time the product left the defendant's control; (3) the product was expected to, and did, reach the consumer without substantial alteration; and (4) the plaintiff's injuries proximately resulted from the defect in the product." *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1205 (7th Cir. 1995). Under Indiana law, "[a] product is not defective . . . if it is safe for reasonably expectable handling and consumption. If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable." Ind. Code § 34-20-4-3. Furthermore, a seller of a product is not liable for harm caused by a modification or alteration to the product after delivery to the initial user or consumer if the modification or alteration is the proximate cause of harm and the modification or alteration is not reasonably expectable to the seller. Ind. Code § 34-20-6-5.

Defendants argue that the Machine was not defective when it arrived at Nisco's Bremen facility. The injury to Abbott, Defendants argue, could not have occurred but for Nisco's modification to the safety gate. In response, Plaintiff argues that Nisco's modification of the safety gate was reasonably expectable to Defendants because Defendants knew that Nisco intended to modify the safety gates by cutting holes in them. Furthermore, Plaintiff argues, the evidence suggests that Maplan, at Nisco's request, modified the safety gate design by replacing the metal mesh with plexiglass on certain parts of the safety gate so that it would be easier to cut

those holes. Because Maplan thus altered the design of the safety gate, Plaintiff argues, the use of the Machine that caused Abbott's injury must have been reasonably expectable to Defendants. Therefore, Plaintiff concludes, Defendants remain liable for the alleged defect even though Nisco modified the safety gate.

However, Plaintiff's discussion of the foreseeability of the cutting of holes in the plexiglass inserts is beside the point. While the Machine had, at one point, been modified in this manner, Nisco made further modifications to the Machine prior to Plaintiff's injury. Specifically, Nisco replaced the entire original Maplan-manufactured safety gate with a Lexan shield that had been supplied by a third-party vendor. Thus, whether or not Defendants could reasonably expect Nisco to cut holes in Maplan-made machine safety gates generally is not relevant to this case because Plaintiff's injury here did not result from that type of modification.

Plaintiff has identified no evidence that Defendants should have reasonably expected Nisco to remove the Maplan-made safety gate and replace it with a different shield. It is undisputed that the injury to Plaintiff was made possible because this new shield, not manufactured by Maplan, had been installed on the Machine. Thus, any defect in the design of the original safety gate cannot have been the cause of Plaintiff's injury.

Therefore, Defendants' Motions for Summary Judgment are granted with respect to Plaintiff's strict liability claim.

*Claim II - Negligence*

Under Indiana law, the Indiana Products Liability Act applies to all product liability actions whether the theory of liability is negligence or strict liability. *See Stegemoller v. ACandS,*

*Inc.*, 767 N.E.2d 974, 975 (Ind. 2002). Therefore, the same analysis applies, and Defendants are entitled to summary judgment on Plaintiff's negligence claim as well.

*Claim IV - Breach of Warranty*

Defendants argue that under Indiana law, the theory of implied warranty in product liability actions has been superceded by the theory of strict liability. *See TLB Plastics Corp., Inc. v. Procter and Gamble Paper Products Co.*, 542 N.E.2d 1373, 1375 (Ind. App. 1989). Plaintiff counters that actions for breach of warranty survive in Indiana under the Uniform Commercial Code ("UCC"). According to Plaintiff, the Indiana Product Liability Act and the UCC provide alternative remedies. However, Plaintiff's breach of warranty claim does not purport to state a claim under the UCC. Indeed, an action for breach of implied warranty by someone other than the purchaser of the product is not a viable claim in Indiana. *See Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 577-78 (Ind. App. 1986) ("whatever advances had been made by the theory of breach of implied warranty in tort . . . [c]learly, the . . . theory if ever it was viable in this state, became merged with the theory of strict liability in tort.").

Thus, because Plaintiff's breach of warranty claim in Count IV is not distinct from his strict liability claim in Count I, summary judgment will be granted with respect to Count IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are granted

Dated: June 16, 2010
6-16-2010

JOHN W. DARRAH
United States District Court Judge

8